Good morning, Your Honors. Mike Mason on behalf of Petitioner Cabrera-Rosario. I'll be brief. I represent a client who received a 20-year sentence on a first offense. Someone who had never been in the criminal justice system before. During the course of his representation, he hired an attorney from the New York area, Mr. Cabrera being from the East Coast, I believe New Jersey. He hired a lawyer who had limited experience in criminal law and very questionable integrity as it later proved out. The issues that are presented by way of the brief relate to whether or not the plea offer was adequately communicated to Mr. Cabrera by his retained lawyer. The government's brief clearly states that Petitioner has artificially created a time frame between September 3rd and September 13th and ignores the broader time frame which was raised at the time of the hearing on the matter. Petitioner does not ignore the testimony expanding the time frame, but Petitioner definitely rejects the notion that the September 3rd to September 13th time frame is artificially constructed. There's nothing artificial about that time frame because that is the only time frame that is corroborated by any writing, by the testimony of any witness. The rest of the time frame is, at least clearly in my view, is an afterthought that comes up, and if anything is artificially constructed, it's the time frame in which the retained counsel indicates that he communicated the plea offer after. The reason the 3rd to the 13th time frame is important and is corroborated in a writing by the government to the defense lawyer, which apparently was FedExed to the east coast. Within that time frame, counsel communicates to the government that, in fact, which is verified by government counsel's notes, that the offer, in effect, has been rejected. The defense counsel, other than saying, has no recollection of when he communicated this offer, how he communicated this offer, who was present when the offer was communicated. It's clear at the time of this time frame between September 3rd and September 13th that Mr. Cabrera was in custody at MDCLA, and that Mr. the defense lawyer was still in his office on the east coast in New York. The defense counsel makes, has no record that he made the communication. So to the extent that the, it's only later at the hearing of the matter where the defense counsel is testifying that he comes up with the uncorroborated statements that he has made that he later communicated the offer. Again, the offer is in writing, and clearly the offer, the September 13th, September 3rd to 13th offer is in writing, and clearly states that if it is not accepted by the 13th that it is withdrawn. So counsel never explains how it is that he never knows and has no corroboration that he offered or explained the subsequent offer after the 13th, simply that he didn't. Is your argument going to the point that the district judge was clearly erroneous in his factual determination that the offer was communicated? Yes. And thank you for bringing that up. And why I feel that it's clearly erroneous, obviously he sat, the judge sat and listened to the testimony of the defense counsel and also to the government lawyer. And what's interesting about the government, about the judge's determination and why I think it rises to the level of being clearly erroneous is the, because the district judge clearly recognizes the question of credibility as it relates to the defense lawyer. Because the defense lawyer obviously has a history of committing perjury, suborning perjury in his own bankruptcy case. Even though that's the case, it was corroborated both by his prior defense counsel Brewer and by Samantha Jesner, who was the USA at the time? Yes. So he explains corroboration in that. Well, I would disagree that Ms. Brewer corroborated the defense lawyers. Ms. Brewer testified that once, and she was the appointed counsel on the case, that once she was relieved, she had no further contact with retained counsel. But she does testify that he was unwilling to enter into any kind of play. Right. And that's in large part why, as I understand it, why retained counsel came in. Correct. She doesn't corroborate what substantive conversations may or may not have occurred. Even assuming that the, and the client clearly denies that any offer was communicated to him. Even assuming, well, I'm sorry, let me go back to the clearly erroneous standard. What's interesting about the district court's position is he recognizes the credibility problem with the defense lawyer. So his argument, he makes an interesting, at least in my view, an interesting logical argument based on speculation. Basically he says, you know, this lawyer is, his skills and his credibility are so questionable that it's obvious to me, meaning the district court judge, that he's this type of personality, the type of lawyer that undoubtedly would have tried to dispose of this case and undoubtedly would have tried to communicate. That's the sort of reasoning that I think is not supported in logic. That's the sort of reasoning that's backdoors into, in other words, he takes the lack of credibility, the recognized lack of credibility of the witness, and then uses that to bootstrap and say, well, I believe that he communicated the offer because he has a credibility problem. He's the type of lawyer that would try to get out from underneath this case. Even assuming that the offer was communicated, the only time that we know for sure that an offer was communicated was during this time period between September 3rd and September 13th. The defendant speaks Spanish and always utilized a Spanish interpreter. The retained lawyer cannot, could not tell us when, how, or even if he communicated the offer between September 3rd and September 13th. The retained lawyer also testified he does not speak Spanish. It is, it is absolutely, in my view, imperative that if a lawyer is going to communicate a plea, a written plea offer to a- This is an absolute requirement of representing a Spanish-speaking defendant when you yourself don't speak Spanish? This is an absolute requirement of adequate law practice? In my view, that's my practice. Does anybody agree with you? Well, the, the, the- I mean, that may be what you do, but a lot of lawyers do different, different things differently. Well, relying on Chacon versus Wood and then also the, the statement, in my view, it's in order to, to effectively communicate the offer. I don't know how a person could effectively communicate an offer to, offer to a non-Spanish-speaking, by way of a non-Spanish-speaking person to a Spanish-speaking person. How can you make that effective communication? I'm not sure how that- Did he say he used the defendant's bilingual wife? Well, he said he spoke to her. He never testified that he actually used her to communicate, because he says he doesn't remember it, the communication. That's speculation on the part of the government, speculation on the, particularly on the part of the government. I don't know if the judge made that, made that leap. But the defense lawyer never said, I used the wife to communicate. He simply said, I spoke to the wife. She told me that he wasn't interested in taking the offer. But he never indicated that he used the wife to communicate the offer or- Because the lawyer talked to her about it, called her on the phone and talked to her about it. So he talked to her. She comes back later and says the defendant isn't interested in the offer. And she made that up? Or how did that work? Well, that's what the defense lawyer said. Of course, we don't have any statement from the wife to that, for that proposition. That's simply what the defense lawyer says. But he doesn't indicate- The wife was probably the subject of being called by the defense and by the prosecution at this evidentiary hearing. In other words, are we going to hold the evidence of her testimony against the government or the defendant? Well, I would think that it's the, it would be the government's obligation, or the defense lawyer's obligation, to establish that, in fact, he made the communication. He said he doesn't remember. All he remembers is he had a discussion with her that he, that the defendant didn't care for the, for the, for the offer. I know your time is up, but there's one point that concerns me. And if my colleagues don't mind, I'd like to ask this question. You've covered the issues, as I understand them from your brief, up to one point, and that's the prejudice issue. That is, regardless of whether or not the offer was communicated to your client, it doesn't make any difference at all to the outcome of this case unless there's some evidence that we can say that had it been communicated that your client was in a position to go to the court and have that, that plea accepted. But the, the record indicates clearly that the government would not have done it, that they have a policy in their client against it, in their office against it. Indeed, the, the attorney said she literally laughed out at the possibility. And then she has an indication here that the court rarely accepts Alford pleas. So would the government, adamant that it would not have given such a plea agreement to the court, and the only evidence being that the court rarely accepts such pleas, where is your prejudice in the case? Well, if I can just, under an Alford plea, as I understand it, the government is not required to give its assent. It's, it's basically a plea offered to the court without any assent by the, by the government. I understand, but realistically, we know that no one enters a plea without a deal from the government to get some benefit from, from entering a plea. And secondarily, there's, you rarely find a, a district court judge that will accept a plea over the objection of the government. I mean, that's just reality that we're aware of. Yes. And, and, and certainly defense counsel never even raised the, the possibility of an Alford plea with. The prejudice is that the difference between 10 years and 20 years. I understand you have to, you have to, if you got in there, but if you have a situation where the government's going to object, the district court rarely offers them, then whether or not your client got it, if it wouldn't have done any good, how are you, how is he prejudiced? That is, don't you have to demonstrate that had he had the plea, X would have happened. But the record shows that if he had the, the offer, X would not have happened. Yes. That, that offer, an Alford plea is a rarity in, in district court. That they do not come up very often. That the, that the, that the district court judge rarely accepts Alford pleas is simply saying that it rarely comes up in his court. Of the amount of Alford, but he's, but what's interesting is the district court judge said he never gave an example of where he didn't accept an Alford plea. In this particular case, not only the district, not only the, the government counsel felt it was an extremely strong case, but so did the defense counsel. And the, and, and the district court, obviously, during the course of this, repeatedly said that it was an overwhelming case. In my view, there was no indication that the district court judge would have rejected an Alford plea, given the strength of the evidence. Well, there's nothing in the record from your side at all. And the only thing we have from the other side is its supplemental record 468, in which the counsel for the government testified that courts rarely accept Alford pleas. And that in, at page 372, et cetera, that they would have opposed it vigorously. So do you think you have demonstrated that there's, that there's prejudice to your client? Yes. Okay. Thank you.  Thank you, counsel. May it please the Court. I'm Michael Rafel on behalf of the United States. Your Honors, in this case, the question is whether, after the extensive hearing the district court had, whether the district court clearly erred in its determination that the defendant received constitutionally effective assistance of counsel in this case. The district court did not err. This was, at bottom, a credibility determination. While, of course, Mr. Cobler, the defense attorney, had baggage, and there were a lot of things that he didn't remember seven years later, as far as the exact timing of things, and there are records he didn't have. What he did testify to at pages 290 and 99 of the government's extractive record is that he remembers without a doubt sitting down in an interview room with the defendant with a Spanish interpreter and going line by line over a plea agreement. He also testified that what he remembered is that page 290, he remembered being yelled at by the defendant's wife about why are you trying to force a plea agreement down our throats. So these, one has to be in the courtroom where Judge Keller was to truly make a credibility determination, but when one reads the dry testimony and there are things he doesn't remember, but there are some very definite things he does remember, I think that that's enough to see how the court could have relied on the testimony determined that a plea agreement was, in fact, communicated. And this was, as Judge Wardlaw notes, confirmed generally by the testimony of Marcia Brewer, defendant's prior counsel, who said, I gave, testified that she gave the defendant two plea agreements and he turned down each one and he insisted on wanting to go to trial. It's corroborated generally by the fact the defendant did go to trial, testified, told a story that was, made so little sense that the district court imposed an obstruction of justice enhancement for perjury on the defendant after the trial. So all the indications are that the defendant wanted to go to trial and did not want to plead guilty and that's certainly enough for the district court, which has to make a decision in 2003, seven years later, as to whether there was unconstitutional representation in failing to provide, to communicate a plea agreement. The district court also, of course, relied on the general circumstances that how could this defense counsel be talking repeatedly to the prosecutor about the plea agreement, which both the prosecutor and the defense counsel testified to, without the defense counsel then going back to the defendant and communicating that. To the district court, that made no sense. Both the prosecutor and Cobbler testified that they were discussing a possible plea up until the time of trial. So his testimony was in some way, Cobbler's testimony was in some way corroborated or confirmed by Marcia Brewer, the prior counsel, by the prosecutor, Jessner, and just by the general circumstances of the case. On the Alford issue, which Judge Wallace brought up, I believe it is the case the defendant cannot show actual prejudice even if the idea of an Alford plea was not suggested to him. The actual prejudice argument actually has two parts. One is what Judge Wallace mentioned, which is there's simply no indication that the defendant would have accepted an Alford plea if the court would have or the defendant would have. Well, that's the two parts. The court would not have. The testimony we had, in addition to what Judge Wallace pointed out to defense counsel at page 460, the court said he would not have accepted an Alford plea. He said, quote, there's no way, unquote, I would have taken an Alford plea. They're very rare. One can look at the U.S. Attorney's Manual as a public document available online and one looks at the guidance of prosecutors for an Alford plea. There is no circumstance where the government would go along with an Alford plea. That's where a defendant is coming into court and saying, I plead guilty, but I don't want to make a factual basis. Well, he said, he said there's no way I would have taken a NOLO plea. He didn't say Alford plea. I believe he said an Alford plea, but let me. If you like, there is no way I would have taken a NOLO with the facts that the government proffered. You are correct. That is correct. So it wasn't an Alford. And he does say they're different. You are correct, and I stand corrected on that. They are very similar, and in fact, the Federal rules make them very similar. If you look at Rule 11a3, which is NOLO pleas, it instructs the court, the court cannot accept a NOLO plea unless it takes, until it takes into consideration the views of the parties and the effect on the administration of justice. This means, you know, as the U.S. Attorney's Manual also instructs prosecutors, that it's very bad for the public image of the court system to have defendants coming into court and not admitting the facts underlying their guilt and then going into prison and, you know, perhaps complaining about the fact that they're, you know, innocent people in prison for the rest of the time. And so the court is supposed to take into consideration for NOLO pleas both the views of the parties and the effect on the administration of justice. And in the notes to Rule 11 in the 1974 amendment notes, it draws a parallel between NOLO pleas and Alford pleas and suggests that the same standards should apply for Alford pleas as to NOLO pleas. Roberts. Well, I think you've made your point. He's indicated that he would not have accepted a NOLO, and it's another step higher to get him to accept an Alford because, as you pointed out, they're so rare. Yes. But the other string of prejudice that he pointed out is he made a factual finding that the defendant would not have changed his mind had he been given the Alford information, and therefore there's no prejudice. That is correct. So the no prejudice has two strands. Number one, he made a factual finding that had the offer been given to the defendant, if it was or it wasn't, had it been given, he would not have changed his mind to give an Alford plea. And then the other is that he would not have accepted a NOLO plea in this case. So you're – you have two strands for your no prejudice argument. Is that correct? Yes, Your Honor. We do, and I would further add that that strand about the defendant not accepting it is well supported by all the other circumstantial facts that – that I suggested. There's no reason to think that the defendant would have accepted it. Review for me, it's been a while since I had an Alford plea case, but usually when you see an Alford plea, there's a – there's an agreement with the government. There's an underlying plea agreement, and the defendant says, I don't want to admit a factual basis, but I'm willing to plead guilty, without an agreement with the government. And what he's offering to do is plead straight up to the indictment and not admit guilt. Is that – is that what an Alford plea without a plea agreement with the government would amount to? That is, Your Honor, and – What's the prejudice in not getting it? Because if he pleads straight up to the indictment with no plea agreement, he's going away for a long time, which is about where he ended up here. Well, Your Honor, for a regular plea, when a defendant pleads straight up to the indictment, the court must find a factual basis under Rule 11 and under the practice that occurs every day in our court. An Alford plea is something else because it's the defendant saying, I'm guilty, but I'm not going to agree to a factual basis. And this is something that, you know, I can speak for the Central District of California's U.S. Attorney's Office, which is that no one can recall an Alford plea occurring, you know, in recent years from our office. And I can speak for, you know, the Department of Justice's official policy, which is that we don't agree to Alford pleas. There are rare circumstances in agreeing to a NOLO plea. But if he had fought his way through the procedural hurdles to get an Alford plea in front of the court, he gets no benefit. Yes. That is correct. It's the same as him pleading straight up to the indictment and admitting a factual basis, which further supports the actual prejudice argument, and it supports the district court's view that there's no reason to think that the defendant would have agreed to this when he is not agreeing to just come in without a plea agreement and plead straight up. If there are no further questions, I will submit on that. All right. Thank you. Thank you, Your Honor. U.S. v. Cabrera-Rosario is submitted. Argument in U.S. v. Florville has been vacated. Maynor v. Hornung is submitted on the briefs. We'll take up U.S. v. Tirada.
judges: Wallace, T. G. Nelson, Wardlaw